UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED BROTHERHOOD OF CARPENTERS & JOINERS OF AMERICA, et al., | ) ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 11-353 (RBW) |
| OPERATIVE PLASTERERS' & CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES & CANADA, AFL-CIO, | ) ) ) ) ) ) | |
| Respondent. | ) ) | |

## MEMORANDUM OPINION

This case arises from a jurisdictional dispute over the assignment of work for the South Regional Elementary School No. 11 Project ("No. 11 Project"), a public elementary school construction project in Los Angeles, California. The dispute was submitted to arbitration, and Arbitrator Thomas G. Pagan entered an award in favor of the Operative Plasterers' and Cement Masons' International Association ("Association"). See Respondent's Motion for Summary Judgment ("Ass'n's Mot."), Exhibit ("Ex.") 8 (February 7, 2011 Arbitration Award ("Award")) at 6. The United Brotherhood of Carpenters and Joiners of America ("Brotherhood of Carpenters") and the Southwest Regional Council of Carpenters ("Southwest Regional Council") petitioned the Court to (1) vacate the arbitration award; and (2) award attorneys' fees, costs, and expenses to the United Brotherhood of Carpenters and the Southwest Regional Council. Petition to Vacate Arbitration Award ("Council's Pet.") at 7. The Association filed an answer and a counterclaim,

1

requesting the Court to: (1) confirm the arbitration award; (2) order Frye Construction, a contractor, the United Brotherhood of Carpenters, and the Southwest Regional Council to comply with the award; (3) compensate the Association for losses suffered as a result of the United Brotherhood of Carpenters' and the Southwest Regional Council's non-compliance with the award; and (4) award attorneys' fees, costs, and expenses to the Association. Respondent's Answer to the Petition to Vacate Arbitration Award ("Ass'n's Answer") at 4; Respondent's First Amended Counterclaim to Confirm Arbitration Award ("Ass'n's Am. Countercl.") at 10.

The matter is now before the Court on the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. Petitioners' Motion for Summary Judgment ("Council's Mot."); Ass'n's Mot. For the following reasons, the Court must grant the Association's motion for summary judgment and confirm Arbitrator Pagan's award.[1]

## I. BACKGROUND

The petitioners, United Brotherhood of Carpenters and its local affiliate the Southwest Regional Council, and the respondent, the Association on behalf of its local affiliate Plasterers Local 200, are labor organizations engaged in the building and construction industry. Council's Answer to Countercl. ¶¶ 6, 9. On May 12, 2003, approximately thirty labor organizations, including the Brotherhood of Carpenters' local affiliate the Southwest Regional Council and the Association's local affiliate Plasterers Local 200, entered into the Los Angeles Unified School

---

[1] The Court also considered the following filings in resolving the motions for summary judgment: the Respondent's Counterclaim to Confirm Arbitration Award; the Petitioners' Answer to Counterclaim to Confirm Arbitration Award ("Council's Answer to Countercl."); the Petitioners' Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Council's Mem."); the Respondent's Memorandum in Support of Its Motion for Summary Judgment ("Ass'n's Mem."); the Petitioners' Opposition to Respondent's Motion for Summary Judgment ("Council's Opp'n"); Errata to Petitioners' Opposition to Respondent's Motion for Summary Judgment ("Errata to Council's Opp'n"); the Respondent's Memorandum in Opposition to Petitioners' Motion for Summary Judgment ("Ass'n's Opp'n"); the Petitioners' Reply Brief in Support of Their Motion for Summary Judgment ("Council's Reply"); and the Respondent's Reply Brief in Support of Respondent's Motion for Summary Judgment ("Ass'n's Reply").

District Project Stabilization Agreement ("LAUSD Agreement").[2] Ass'n's Mot., Ex. 2 (Agreement) at 47-48. The LAUSD Agreement is a pre-hire collective bargaining agreement authorized in the construction industry pursuant to 29 U.S.C. § 158(f) (commonly referred to as an "8(f)" agreement). Council's Pet. ¶ 1. The LAUSD Agreement "establishes the labor relations Policies and Procedures for the [Los Angeles Unified School] District and for the craft employees represented by the [u]nions engaged in the District's new school and building construction and substantial rehabilitation and capital improvement program . . . ." Ass'n's Mot., Ex. 2 (the Agreement) at 1. In other words, the LAUSD Agreement creates a uniform standard of procedures and policies for construction projects in the Los Angeles Unified School District. See id.

The local unions and contractors bind themselves to the LAUSD Agreement in different ways. The local unions are "signatory" parties to the LAUSD Agreement. Ass'n's Mot., Ex. 2 (LAUSD Agreement) at 12 § 3.1; see also id. at 47-48 (identifying the thirty unions signatory to the Agreement). Contractors, on the other hand, are bound to the LAUSD Agreement on a project-to-project basis. Id. at 9 § 2.5(b). According to the LAUSD Agreement,

> all contractors and subcontractors of whatever tier, who have been awarded contracts for work covered by this Agreement, shall be required to accept and be bound to the terms and conditions of this Project Stabilization Agreement, and shall evidence their acceptance by the execution of the Agreement or of the [l]etter of [a]ssent . . . prior to [the] commencement of work.

Id. Once a contractor is bound to the Agreement, it is required to "recognize[] the [Los Angeles/Orange Counties Building and Construction Trades] Council and the signatory local [u]nions as the exclusive bargaining representatives for the employees engaged in Project Work." Id. at 12 § 3.1.

---

[2] The Agreement was amended on or about October 31, 2003, and remains in effect through September 2013. Ass'n's Mot., Ex. 3 (Amendment Extending the Agreement).

3

In an effort to prevent and efficiently resolve jurisdictional disputes, the LAUSD Agreement requires contractors to make work assignments "in accordance with the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (the 'Jurisdictional Plan')." Ass'n's Mot., Ex. 2 (LAUSD Agreement) at 28 § 8.1. A jurisdictional dispute is "[a] dispute between unions over the assignment of work and in which a [c]ontractor has an interest." Id. at 10. Further, any jurisdictional dispute that does arise "shall be settled and adjusted according to the [Jurisdictional] Plan." Id. § 8.2. The Jurisdictional Plan calls for the submission of all jurisdictional disputes to arbitration, Ass'n's Mot., Ex. 1 (Jurisdictional Plan) at 21, at which an arbitrator will determine the proper work assignment based upon a variety of factors including "the established trade practice in the industry and the prevailing practice in the locality." Id. at 24.

The present case arises from Frye Construction Incorporated's assignment of work at the No. 11 Project to its employees, who are represented by the Southwest Regional Council. Council's Answer to Countercl. ¶ 2(a). The Association disputed Frye Construction's work assignment, arguing that the work should have been assigned to employees represented by the Plasterers Local 200, Ass'n's Am. Countercl. ¶ 2(b), and submitted the dispute to the Administrator of the Jurisdictional Plan for resolution on January 10, 2011,[3] Ass'n's Mot., Ex. 7 (January 10, 2011 Article IV Complaint for Arbitration ("Complaint for Arbitration")) ¶¶ d, e. On January 24, 2011, the Frye Construction employees unanimously voted in favor of representation by the Southwest Regional Council. Ass'n's Answer ¶ 19. As a result of the election, the National Labor Relations Board certified the Southwest Regional Council as the

---

[3] While neither the Association nor the United Brotherhood of Carpenters are signatory to the Agreement, the Plan directs the National and International Unions to challenge work assignments and represent their local affiliates in jurisdictional disputes. See Ass'n's Mot., Ex. 1 (Plan) at 6 ("When a dispute over an assignment of work arises, the [n]ational or [i]nternational [u]nion challenging the assignment . . . shall notify the [a]dministrator in writing.").

exclusive bargaining representative for the Frye Construction employees on February 2, 2011. Council's Mot., Ex. B (Certification of Representative Southwest Regional Council ("Certification")). On February 7, 2011, Arbitrator Pagan ruled on the dispute, finding that the work should have been assigned to workers represented by Plasterers Local 200. Ass'n's Mot., Ex. 8 (Award) at 1, 7. Then, on March 8, 2011, Frye Construction signed a letter of assent binding itself to the LAUSD Agreement.[4] Ass'n's Mot., Ex. 9 (March 8, 2011 Letter of Assent). Frye Construction, the Brotherhood of Carpenters, and the Southwest Regional Council have not complied with Arbitrator Pagan's award. Council's Ans. ¶ 5.

Currently before the Court are the parties' cross-motions for summary judgment under Rule 56, arguing for or against the enforceability of the arbitration award. Specifically, the Brotherhood of Carpenters and the Southwest Regional Council request that the Court vacate the arbitration award, Council's Mem. at 3, while the Association requests that the Court affirm the award, Ass'n's Mem. at 1. The Brotherhood of Carpenters and the Southwest Regional Council

---

[4] There is some disagreement as to when Frye Construction actually assented to the LAUSD Agreement. "[The Southwest Regional Council disputes [the Association's] assertion as undisputed that Frye became party to the [LAUSD Agreement] on March 8, 2011." Council's Opp'n at 6. The Council asserts, and this Court's review of the record confirms, that when the Association submitted the No. 11 Project dispute to arbitration on January 10, 2011, the Association representated to the administrator of the Jurisdictional Plan that "Frye is performing the work under subcontract . . . [and] Frye has assigned the work in dispute to the Carpenters." Ass'n's Mot., Ex. 7 (January 10, 2011 Arbitration Complaint). The United Brotherhood of Carpenters and the Southwest Regional Council argue that the letter of assent is not the controlling evidence of when Frye Construction bound itself to the Agreement, arguing instead that the letter merely "confirms" that Frye Construction was already bound to the Agreement. Council's Opp'n at 7. They rely on the statements in the January 10, 2011 arbitration complaint to demonstrate that Frye Construction was performing the work on the No. 11 Project and was bound to the Agreement prior to the Frye Employees' vote and the subsequent certification of the Southwest Regional Council as their exclusive representative.
   The Court, however, declines to accept the Council's invitation to engage in an examination of what the language "is performing" means in assessing exactly when Frye began performing the No. 11 Project work, as it is clear that, regardless of whether Frye may or may not have previously been bound to the LAUSD agreement by commencing work on the No. 11 Project (this, of course, overlooks the fact that the only two ways a contractor can bind itself to the Agreement are to (1) sign the actual Agreement, or to (2) issue a letter of assent), Frye Construction issued its letter of assent on March 8, 2011. The fact that Frye Construction issued the letter of assent on March 8, 2011, as evidenced by the summary judgment record now before the Court, provides a sufficient basis on which the Court may conclude that Frye became bound by the LAUSD Agreement and its incorporation of the Jurisdictional Plan at least as of March 8, 2011.

5

contend that the award is invalid and should be vacated for three reasons. Council's Mot. at 6-10. First, they argue the Association should be precluded from litigating the same issue that was previously decided by this Court in <u>Operative Plasterers' & Cement Masons' International Association, AFL-CIO v. Jordan Interiors, Inc.</u>, 744 F. Supp. 2d 49 (D.D.C. 2010). Council's Mem. at 6. Second, the Brotherhood of Carpenters and the Southwest Regional Council assert that Arbitrator Pagan lacked contractual authority to enter the award because once the employees of Frye Construction had selected the Southwest Regional Council as their exclusive representative, Frye Construction was prohibited from entering into the LAUSD Agreement. Council's Mot. at 10, 13. Third, they argue that enforcement of the award would be unlawful and "repugnant" to the National Labor Relations Act. <u>Id.</u> at 10, 13-14; Council's Reply at 17.

In contrast, the Association maintains that the certification of the Southwest Regional Council as the Frye Construction employees' exclusive representative cannot nullify Frye's assent to the LAUSD Agreement because certification does not terminate prospective agreements where such agreements do not infringe employees' rights to collectively bargain with their employers and vote on their representation. Ass'n's Mem. at 3. Thus, the Association argues, all parties are contractually bound to the LAUSD Agreement and accordingly also to the Plan's jurisdictional dispute resolution procedures. <u>Id.</u> at 4. The Association further maintains that the enforcement of Arbitrator Pagan's award would not interfere with the Frye Construction employees' choice of representation because Frye Construction can subcontract the work to employees represented by Plasterers Local 200. <u>Id.</u> Finally, the Association asserts that even though Frye Construction was not bound by the Agreement or the Plan at the time of the arbitration, Frye Construction still must comply with the award because the award constitutes the proper work assignment in accordance with the Plan, to which it is now bound. <u>Id.</u> at 18-19.

6

Thus, the three issues before the Court are: (1) whether the Association is precluded from pursuing its claims in this case, and, if not, (2) whether the LAUSD agreement became prospectively void as to Frye Construction when the Frye Construction employees selected the Southwest Regional Council as their exclusive bargaining representative, and, if the Agreement is valid, (3) whether Arbitrator Pagan's award can be enforced without violating the National Labor Relations Act.

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 56

A court will grant a motion for summary judgment under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating such a motion, the Court must view the evidence "in the light most favorable to the non-moving party." Evans v. Sebelius, 674 F. Supp. 2d 228, 238 (D.D.C. 2009) (citations omitted). The Court must also accept evidence provided by the non-moving party as true, drawing "all justifiable inferences" in the non-moving party's favor. Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

### B. The Court's review of arbitration awards

With respect to this Court's review of arbitration awards, "when parties to a collective bargaining agreement have agreed to submit to arbitration, the function of the court is extremely limited." Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 254 F. Supp. 2d 12, 14 (D.D.C. 2003) (citing Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1473 (D.C. Cir. 1997) (internal citations omitted)). "Although '[c]ourts exercise only limited review of the merits of an arbitrator's decision in a labor dispute, [ ] they retain full authority to vacate awards that fail to

7

confine themselves to matters within the scope of the arbitrator's assigned jurisdiction,'" Howard Univ. v. Metro. Campus Police Officer's Union, 519 F. Supp. 2d 27, 32 (D.D.C. 2007) (alterations in original) (quoting Commc'n Workers, AFL-CIO v. Am. Tel. & Tel. Co., 903 F.Supp. 3, 5 (D.D.C. 1995) (), and it is well established that "an arbitration award must draw its essence from the parties' collective bargaining agreement." Id. Thus, the arbitrator must "have [had] the contractual authority to" issue the award before the award can be enforced. Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 744 (1981) ("An arbitrator's power is both derived from, and limited by, the collective-bargaining agreement."). Accordingly, in instances where the arbitrator's authority stems from a collective bargaining agreement, an arbitration award may be unenforceable if: (1) the collective bargaining agreement was subsequently terminated and the arbitrator's authority extinguished, see Pioneer Natural Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Int'l Union, 338 F.3d 440, 441 (5th Cir. 2003) (per curiam); or (2) the award "is in 'explicit conflict' with 'other laws and legal precedents,'" Am. Postal Workers Union v. U.S. Postal Serv., 550 F.3d 27, 32 (D.C. Cir. 2008) (citing United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 43 (1987)).

### III. ANALYSIS

A. Issue preclusion

The United Brotherhood of Carpenters and Southwest Regional Council assert that the doctrine of issue preclusion prevents the Association from litigating the same issue that this Court decided in its September 22, 2010 resolution two related cases, Civil Action No. 09-1160 (RBW) and Civil Action No. 09-2212 (RBW). Ass'n's Mem. at 6-10. However, because the Court's September 22, 2010 Memorandum Opinion contained a misstatement of relevant fact, the Court has since granted the Association's motion for reconsideration in that case and has issued

8

an Amended Memorandum Opinion correcting the error. The Court will thus decline to apply the doctrine of issue preclusion, as the case that the United Brotherhood of Carpenters and the Southwest Regional Council assert bars the Association from pursuing their current claims contained a factual error. See Paley v. Estate of Ogus, 20 F. Supp. 2d 83, 94 n.9 (D.D.C. 1998) (explaining that because issue preclusion is an equitable doctrine, applying it in an instance where a factual assertion had not properly been before the court in earlier litigation would be unfair).

> B. The validity of Frye's Assent to the LAUSD Agreement and the enforceability of Arbitrator Pagan's award

The United Brotherhood of Carpenters' and the Southwest Regional Council's assert that

> [t]he [Southwest Regional Council], the [United Brotherhood of Carpenters] and Frye Construction were not contractually obligated to the [Jurisdictional] Plan through the [LAUSD Agreement] . . . and cannot be required to submit to the Plan and the Plan award. . . . The contractual arbitration award obtained by [the Association] directly conflicts with the election [and certification of the Southwest Regional Council as Frye Construction's employees' exclusive representative], which prohibit[s] Frye Construction from recognizing any other union, including [the Association] as the 'representative' of any of its construction employees.

Council's Pet. to Vacate at 2. This argument fails for three interrelated reasons.[5] All three of these reasons pertain to the validity of the LAUSD Agreement between the parties to this action and the manner in which project work covered by the Agreement can be assigned by a contractor without violating its employees' rights to exclusive representation and to collective bargaining. First, the LAUSD Agreement did not require Frye Construction's employees' to recognize a bargaining representative other than the Southwest Council when Frye assented to that

---

[5] Stating the obvious, the claim that the Southwest Regional Council is not bound by the LAUSD Agreement has no basis in fact because the Southwest Regional Council is a signatory to the Agreement. Ass'n's Mot., Ex. 2 (LAUSD Agreement) at 48 (listing "Carpenters Regional Council" as a signatory); see also Council's Mem. at 3 ("The [LAUSD Agreement] was signed by both the Southwest Regional Council and [Plasterers Local 200]."); Council's Ans. ¶1a ("the[ United Brotherhood of Carpenters] and the [Southwest Regional Council] admit that the [Southwest Regional Council] signed the LAUSD Agreement and, on information and belief, Frye signed a [l]etter of [a]ssent.").

Agreement on March 8, 2011; Frye Construction's entrance into the Agreement was therefore valid and requires it to adhere to jurisdictional decisions rendered in accordance with the Jurisdictional Plan. Second, the Brotherhood of Carpenters' and Southwest Regional Council's argument overlooks the differences between a jurisdictional dispute and a representational dispute. Third, the arbitration award can be enforced in a manner that does not violate the National Relations Labor Act and that requires Frye Construction to fulfill the contractual obligations it assumed with its March 8, 2011 letter of assent.

In a nod to the unique nature of the construction industry, the National Labor Relations Act creates a limited exception to its otherwise general requirement that employers must obtain majority support from employees before signing collective bargaining agreements. 29 U.S.C. § 158(f). Thus, as noted above, a contractor may enter into an § 8(f) pre-hire agreement recognizing one or more representatives despite the lack of majority employee support. Id. Section 8(f), however, also offers protection to employees in such circumstances by allowing them to decertify or change representatives at any time during the relationship through an election. Id.; see also Nova Plumbing v. Nat'l Labor Relations Bd., 330 F.3d 531, 534 (D.C. Cir. 2003). Upon the National Labor Relations Board's certification of a union as the exclusive representative of a group of employees, any pre-existing contractual obligations arising from a § 8(f) agreement that recognizes other signatory unions as the employees' representatives are nullified. See Nova Plumbing, 330 F.3d at 536–37 ("An agreement between an employer and union is void and unenforceable, [Int'l Ladies' Garment Workers' Union, AFL-CIO v. NLRB, 366 U.S. 731, 738 (1961)], if it purports to recognize a union that actually lacks majority support as the employees' exclusive representative."). After decertification, termination of the § 8(f) relationship occurs because the § 7 protections accorded to employees, including the "right to

self-organization, to form, join, or assist labor organizations, [and] to bargain collectively through representatives of their own choosing," 29 U.S.C. § 157, are fundamental; these rights are often considered superior to the contractual obligations derived from collective-bargaining agreements, such as those derived from pre-hire agreements, which were not endorsed by majority employee support. See Nova Plumbing, 330 F.3d at 537. With this legal framework as its guide, the Court will now explain in detail the three reasons why the Brotherhood of Carpenters' and the Southwest Regional Council's challenge to Arbitrator Pagan's award must be rejected.

First, because the LAUSD Agreement did not require Frye Construction's employees' to recognize a bargaining representative other than the Southwest Council when Frye assented to that Agreement on March 8, 2011, Frye's entrance into the Agreement was valid. Having assented to the LAUSD Agreement and its incorporation of the Jurisdictional Plan, Frye is now required to adhere to awards made in connection with the Jurisdictional Plan, even if such an award was issued before Frye had given its assent. The No. 11 Project dispute was submitted to arbitration on January 10, 2011; the Frye Construction employees unanimously voted for exclusive representation by the Southwest Regional Council on January 24, 2011; the National Labor Relations Board certified that election on February 2, 2011; Arbitrator Pagan awarded the disputed Project No. 11 work to workers represented by Plasterers Local 200 on February 7, 2011; and Frye Construction issued its letter of assent, binding itself to the LAUSD Agreement on March 8, 2011. Ass'n's Opp'n at 16-17. The Southwest Regional Council and the Plasterers Local 200 are both signatories to the LAUSD Agreement and they are therefore clearly both bound by the Agreement's incorporation of the Jurisdictional Plan, enabling them to submit disputes to arbitration and compelling them to adhere to awards rendered pursuant to the

11

Jurisdictional Plan. The only question, therefore, is whether Frye Construction can be bound by an award made pursuant to the Jurisdictional Plan that was issued <u>before</u> Frye bound itself to the Jurisdictional Plan through its assent to the LAUSD Agreement. As explained below, the answer to this question is yes.

If the LAUSD Agreement in any way required the Frye Construction employees to recognize a bargaining representative other than the Southwest Regional Council, Frye Construction's March 8, 2011 assent to the agreement would have been void as it could not legally have entered into the Agreement. See <u>Nova Plumbing</u>, 330 F.3d at 536–37 ("An agreement between an employer and union is void and unenforceable, if it purports to recognize a union that actually lacks majority support as <u>the employees'</u> exclusive representative.") (citation omitted) (emphasis added).[6] The LAUSD Agreement, however, requires no such recognition by Frye Construction or its employees.

Section 3.1 of the LAUSD Agreement states,

> [t]he Contractor recognizes the [Los Angeles/Orange Counties Building and Construction Trades] Council and the signatory local [u]nions as the exclusive bargaining representative for <u>the employees engaged in Project Work</u>. Such recognition does not extend beyond the period when <u>the employee is engaged in Project Work</u>.

Ass'n's Mot., Ex. 2 (LAUSD Agreement) at 12 § 3.1 (emphasis added). This section does not require Frye Construction to recognize all thirty signatory local unions as the representative of <u>its employees</u> (i.e., Frye Construction's entire workforce, the body that unanimously voted for

---

[6] Assuming for the sake of argument that Frye Construction had somehow assented to the LAUSD Agreement before its employees voted for exclusive representation by the Southwest Regional Council on January 24, 2011, Frye's assent to the Agreement would presumably be voided <u>if</u> the Agreement infringed on its employees' right to exclusive representation. Because, however, the LAUSD Agreement does not infringe on a contractor's employees' rights under the National Labor Relations Act to collectively bargain and to vote for exclusive representation, it is immaterial when Frye assented to the Agreement. In other words, even if Frye assented prior to the January 24, 2011 election or the February 2, 2011 certification, it could nonetheless continue to be bound by the Agreement because the Agreement does not disturb either the election or the certification. Indeed, all that really matters is that "[t]he employer in the instant case, Frye Construction, is a party to the [LAUSD Agreement," as the United Brotherhood of Carpenters and the Southwest Regional Council themselves admit. Council's Mem. at 5.

12

representation by the Southwest Council); rather, the recognition of unions signatory to the LAUSD Agreement extends to <u>the employees who are engaged in Project Work</u> (i.e., presumably a smaller subset of Frye Construction's workforce who will work on the project covered by the Agreement or employees referred to Frye Construction by other signatory unions to perform project work). Accordingly, the LAUSD Agreement does not impermissibly attempt to alter or strip the employees performing project work of their right to choose an exclusive representative to engage in negotiations with their employer on their behalf; rather, § 3.1 of the LAUSD Agreement simply requires contractors to staff LAUSD projects with employees represented by one of the thirty local unions signatory to the LAUSD Agreement.[7] Put simply, the recognition clause of the LAUSD Agreement applies to contractors who have won bids for LAUSD projects, regardless of what union may or may not represent that contractor's employees. Consequently, the LAUSD Agreement did not strip the Frye Construction employees of their right to exclusive representation by the Southwest Regional Council. Frye Construction's March 8, 2011 assent to the LAUSD Agreement was therefore valid and enforceable, resulting in Frye stipulating to the Jurisdictional Plan's policy of having jurisdictional disputes resolved through arbitration. Thus,

---

[7] Other sections of the LAUSD Agreement confirm that this reading of § 3.1 of the Agreement is correct. For example, Section 3.6(a) of the Agreement provides, in part,

> [e]xcept as otherwise provided in a separate collective bargaining agreement(s) to which the contractor is signatory, a specialty or sub-contractor may employ, as needed, first <u>a member of his core workforce</u>, then <u>an employee through a referral from the appropriate union hiring hall</u> . . . and so on until a maximum of five core employees are employed, after which all further employees shall be employed pursuant to the other provisions of this Article, starting with section 3.3.

Ass'n's Mot., Ex. 2 (LAUSD Agreement) at 15, § 3.6. This section both contemplates that a contractor may be subject to collective bargaining agreements with its own employees and requires a contractor to hire only from union halls signatory to the Agreement. Section 3.3(a), which sets forth referral procedures, provides that "for signatory unions now having a job referral system contained in a Schedule A, the contractor agrees to comply with such system and it shall be used exclusively by such contractor, except as modified by this Agreement." <u>Id.</u> at 13, § 3.3(a).

Frye must comply with arbitration awards resolving jurisdictional dispute arising under the LAUSD Agreement.

Next, based on the record before the Court, it is clear that this litigation concerns a jurisdictional dispute, rather than a representational dispute, as the arguments advanced by the United Brotherhood and Southwest Regional Council seem to suggest. The Brotherhood of Carpenters and the Southwest Regional Council maintain that "[the Association] has no claim to represent any of Frye Construction's employees." Pet. to Vacate ¶ 27. The Court's understanding of the Association's position in this litigation is not that it should represent Frye Construction's employees, but that the work performed on the No. 11 Project should be assigned to members of Plasterers Local 200, the Association's local affiliate. See Ass'n's Reply at 2 ("[The United Brotherhood of Carpenters and the Southwest Regional Council] try to characterize this case as one involving a dispute over the representation of Frye Construction's employees, even though [they] failed to cite any evidence to support a factual finding that the [Association] or Plasterers Local 200 ever sought to be recognized as the exclusive bargaining representative of Frye Construction's employees or ever sought to bargain on behalf of those employees.") (emphasis omitted); Ass'n's Mot. at 30 ("It is beyond debate that, when a union makes a demand that an employer reassign work from the group of employees currently performing that work to another group of employees, the union is not making a demand to represent the employees currently performing the work."). Indeed, that is the exact determination made by Arbitrator Pagan in the award currently under review. See Ass'n's Mot., Ex. 8 (February 7, 2011 Arbitration Award) at 7 (finding that "the work in dispute is properly within the jurisdiction of the [Association] based upon the [Jurisdictional] Plan criteria") (emphasis added). And the National Labor Relations Board has made clear that

14

> a Board certification in a representation proceeding is not a jurisdictional award; it is merely a determination that a majority of the employees in an appropriate unit have selected a particular labor organization as their representative for purposes of collective bargaining. . . . However, unlike a jurisdictional award, this determination by the Board does not freeze the duties or work tasks of the employees in the unit found appropriate.

Plumbing Contractors Ass'n of Baltimore v. United Ass'n of Journeymen and Apprentices, Local No. 48, 93 N.L.R.B. 1081, 1087 (1951); see also United Brotherhood of Carpenters v. Robert Jelinek, et al., 127 N.L.R.B. 565, 576 n.13 (expressing the inability to accept the argument that a demand for recognition and bargaining was implicit in a demand that members of a union be assigned the work in question). In other words, the certification of the Southwest Regional Council as the exclusive bargaining representative of the Frye Construction employees pertains only to the representation of those employees, and not to the work assigned to those employees by the employer. Accordingly, the Court agrees with the Association that "a demand that work be reassigned does not affect [National Labor Review Board] certification [because] the certification extends only to the employees in the unit and not the work they perform." Ass'n's Mot. at 30. Therefore, Frye Construction's March 8, 2011 assent to be bound by the LAUSD Agreement and its incorporation of the Jurisdictional Plan's resolution of jurisdictional disputes through arbitration, was not an infringement of its employees' representational rights. Frye Construction's assent was thus valid, compelling it to comply with Arbitrator Pagan's February 7, 2011 award rendered within the parameters of the LAUSD Agreement (and, consequently, the Jurisdictional Plan).

Finally, the Southwest Regional Council and the Brotherhood of Carpenters argue that in order to enforce the arbitration award, Frye Construction would have to violate the National Labor Relations Act by refusing to honor its workers' rights to exclusive representation and to collective bargaining, and "allow[] the [Association] to initiate arbitration whenever a group of

15

employees the [Association] thinks it should represent under the [LAUSD Agreement] exercise their section 7 rights and vote for another union." Council's Reply at 20. Again, this misrepresents the nature of the conflict, portraying it as a representational dispute rather than a jurisdictional dispute. The arbitration award issued by Arbitrator Pagan in February 2011 designated the proper work assignment under the Jurisdictional Plan, and required Frye Construction to reassign the plastering work at Project No. 11 to members of Plasterers Local 200. Ass'n's Mot., Ex. 8 (February 7, 2011 Arbitration Award) at 7-8. Allowing a contractor such as Frye Construction to assert the exclusive representation of its employees as a shield against jurisdictional awards made in accordance with the Jurisdictional Plan would allow a contractor to enjoy the benefits of the LAUSD Agreement without complying with all of the Agreement's terms and conditions—namely the provision requiring resolution of jurisdictional disputes through arbitration—to the detriment of other parties to the Agreement and third parties dependent on the Agremeent.

The Association contends that Frye Construction could comply with the award by "subcontracting the disputed work to a subcontractor that utilizes employees represented by Plasterers Local 200 " without violating any § 7 rights because the certification of representation extends only to the employees and reassignment of work does not affect such representation. Ass'n's Mem. at 4. In response, while admitting that such a remedy is possible, the Southwest Regional Council and the Brotherhood of Carpenters again conflate the employees (i.e., the subject addressed by certification) with the employees' work assignments (i.e., the subject addressed by jurisdiction), stating that enforcement of "[t]he arbitration decision[] by Arbitrator Pagan achieve[s the] impermissible result of punishing Frye's employees by, after the election, forcing Frye to subcontract the work." Council's Reply at 19-20. For several reasons the Brother

16

of Carpenters' and the Southwest Regional Council's position fails.  First, as explained above, the nature of a representational dispute is different from a jurisdictional dispute and the latter may be resolved regardless of the certification of one union as a group of employees' exclusive representative.  See Carey v. Westinghouse Electric Corp., 375 U.S. 261, 269 (1964) (explaining that "a [National Labor Relations] Board certification in a representation proceeding . . . does not per se preclude the employer from adding to, or subtracting from, the employees' work assignments").  Second, because Frye Construction assumed contractual obligations with respect to the LAUSD Agreement when it issued its March 8, 2011 letter of assent, they should be required to fulfill these obligations.  Requiring Frye to subcontract the disputed work would hold it to its contractual obligations and prevent Frye from assuming contractual obligations that it had no intention of performing.  Accordingly, the Court finds itself in agreement with the Association that "the [National Labor Relations Board] never intended that a union and an employer could manipulate their bargaining relationship in order [to] evade all contractual obligations to other parties, including the contractual agreement to arbitrate jurisdictional disputes."  Ass'n's Mem. at 28.

    C.  Attorneys' Fees and Costs

The Jurisdictional Plan provides that a "party seeking enforcement of an Arbitrator's decision . . . due to the failure of another party to abide by the decision or ruling shall be reimbursed by the party failing to abide by the decision or ruling for any attorneys' fees, court costs[,] and expenses incurred."  Ass'n's Mot., Ex. 1 (Plan) at 30.  Because the Court has found that the parties to this dispute are bound to comply with the terms of the Plan through their obligations under the Agreement, and given that it is undisputed that the United Brotherhood of Carpenters and the Southwest Regional Council have failed to comply with Arbitrator Pagan's

17

award, the Court finds that the Association is entitled to an award of attorneys' fees and costs associated with enforcing the award.

## IV. CONCLUSION

Because the Agreement does not require a contractor like Frye Construction to recognize the signatory local unions as the exclusive bargaining representative of its employees, the certification of the Southwest Regional Council as the exclusive bargaining representative of the Frye Construction employees did not prevent Frye Construction from entering into the LAUSD Agreement. Thus, when Frye Construction executed the letter of assent, binding itself to the Agreement, it was required to make the work assignment on the No. 11 Project pursuant to the Jurisdictional Plan. Arbitrator Pagan construed the governing agreements when issuing his award, and in light of the deference this Court must show when reviewing an arbitration award, the Court must presume that his award constitutes the proper work assignment under the Jurisdictional Plan. Therefore, the Court must grant the Association's motion, and deny the United Brotherhood of Carpenters' and Southwest Regional Council's cross-motion. Additionally, the Court finds that the Association is entitled to recover its attorneys' fees and court costs associated with the enforcement of Arbitrator Pagan's award.[8]

**SO ORDERED** this 1st day of December, 2011.

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously enter an Order consistent with this Memorandum Opinion.